DAVID DUFFY *v.* FRANCIS CARROLL

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued April 11—decided June 27, 1950

*Robert E. Courtney, Jr.,* for the appellant (defendant).

*James J. O'Connell,* with whom, on the brief, was *Albert L. Coles,* for the appellee (plaintiff).

BROWN, C. J.   The six-year-old plaintiff brought this action by his father as next friend to recover for personal injuries sustained in crossing the street when he was struck by the defendant's automobile, which, it is alleged, was being negligently operated.   The jury rendered a verdict of $2500 for the plaintiff and the defendant has appealed, assigning error in the denial of his motion to set aside the verdict and in the court's allowance of certain questions by the plaintiff upon the voir dire.

The jury could have found these facts: Iranistan Avenue is a main thoroughfare in Bridgeport which runs in a general northerly and southerly direction.   It is about forty feet wide where intersected from the east by Ridge Avenue.   Both streets are tar surfaced, and a crosswalk designated by white lines extends from the southeasterly corner of the intersection to the westerly side of Iranistan Avenue.   There is a grocery store on the southeasterly corner.   Iranistan Avenue is straight and level and is posted with speed signs for twenty-five miles an hour.   Many families with small children live in the vicinity.

At about 2 o'clock on the afternoon of September 15,

1947, the plaintiff, who was six years of age and in the first grade of school and who lived to the west of Iranistan Avenue, was sent to the store to buy a loaf of bread and some sugar, although he had never before gone there alone. As he was on his way home after making the purchase, he stopped on the curb at the east end of the crosswalk, looked both ways and saw no car coming. He then proceeded to walk across on the crosswalk. When he had reached a point beyond the center of the street he was struck by the right front fender of the defendant's car as it proceeded southerly and he landed beyond the westerly curb. There was no other traffic in the vicinity at the time. The defendant was driving his car at a speed of between thirty and thirty-five miles per hour and his sharp application of the brakes resulted in tire marks from fifteen to twenty feet long on the highway. The defendant's brakes were in poor condition and he was hurrying at the time, because he was late for an appointment. The jury were warranted in their conclusion that the defendant's negligence, as alleged, was the proximate cause of the injuries to the plaintiff and that he was free from contributory negligence. In so far as the issue of liability is concerned, there was no error in the court's refusal to set aside the verdict.

There was evidence that these elements of damage resulted: The plaintiff suffered contusions and abrasions, including a good deal of torn and abrased skin on both sides of his chest, two lacerations on his back where the skin was torn, extending down into the muscle tissue one-third of an inch in depth, and a laceration of the lip. An x-ray examination was negative. He made a good recovery. His lip was sutured. He suffered very considerable pain and was confined to the hospital for seven days. One of the lacerations left a permanent scar with a shiny black surface an inch

long and a quarter of an inch wide on the lower right back, and two other smaller scars on the back were visible. The wound on the lip eventuated in a small scar at the edge of the red tissue. After his return home his back bothered him for a time with pain from a sprain. He made some twenty visits to the doctor's office to have the spot on his back dressed. The total special damage was $177, consisting of the hospital bill for $47 and the doctor's bill for $130. Because of the time he lost from school he had to repeat his year in the first grade. For a time he became saucy and disobedient to his parents. Upon all of the evidence of damage, we cannot hold that the court erred in denying the motion to set aside the verdict as excessive.

By an amendment of his assignment of errors the defendant complains of this single paragraph of the finding: "48. On account of the time he lost from school, he was kept back and had to repeat the first grade." This claim of proof is entirely immaterial upon the issues presented on this appeal, where there is no error assigned in the court's charge to the jury. The defendant argues that the loss of a year in school constitutes special damage and since this was not alleged in the complaint the inclusion of it in the jury's award as an element of damage vitiates the verdict. Whether or not it is an item of special damage we need not consider. The only evidence concerning it was brought out on the defendant's cross-examination of the plaintiff's father, which elicited this answer: "[The plaintiff] is still in the first grade. He failed on account of the time he lost in school—he was kept back on account of that loss of time." The defendant did not move to strike out the answer. Neither did he make any request to charge or to submit an interrogatory concerning this as an element of damage. It was in no way referred to by the court in its charge and the defendant

took no exception to the charge as given. In any event the answer served to characterize and indicate the extent of the injuries alleged in the complaint and for that purpose was legitimate and proper for the jury to consider. *Kane* v. *New Idea Realty Co.*, 104 Conn. 508, 512, 133 A. 686; *Blakeslee Co.* v. *Rigo*, 94 Conn. 481, 484, 109 A. 173. The defendant's contention is without merit.

The remaining question is whether the court erred in its rulings upon certain questions addressed, during the selection of the jury, to seven of the twelve jurors who eventually sat on the case. The attorney for the defendant claimed that in examining the veniremen counsel should avoid going into the question "what the law is for a 6 year old boy," because that should be left to the court to cover in its charge. Each of the seven veniremen was asked by the plaintiff's counsel: "Do you feel that a six year old boy is expected to use as much care and caution in crossing a street as an adult person twenty-one years of age?" In each instance the objection made was overruled and exception noted for the defendant. Six of the seven answered in the negative. Before the seventh answered, upon the continuation of his examination, the following ensued: "Question—It becomes important in this case, for this reason: the evidence will disclose a six year old boy, while crossing the street, was struck by an automobile, and one of the questions that will arise is the degree of care that the boy should use. Now, do you feel that you would expect him to use the same degree of care in crossing the street that you would expect from a person over 21? Answer—No. Question—In other words, you appreciate there is a difference between the standards of care? Answer—Yes. Question—Would you follow the Judge's definition of what the care should be from a six year old boy? Answer—Yes." Later,

four of the other six also answered in the affirmative a question of the same purport as the last. Each of the other two of the six, during his examination, in answer to inquiry by the defendant's counsel, indicated that he felt he could decide the case squarely on the evidence and on the law as given by the court.

Section 7908 of the General Statutes entitles either party to the action to examine each juror as to (1) his qualifications to sit as a juror therein, (2) his interest in the subject matter thereof, and (3) his relations with the parties. The purpose of such an examination is twofold. First, it provides information upon which the presiding judge may decide which of the prospective jurors, if any, he should excuse for cause. Secondly, it informs counsel as to matters which may influence them in the exercise of their right to peremptory challenges. "The extent to which parties should be allowed to go in examining jurors as to their qualifications is a matter largely resting in the sound discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused, and where harmful prejudice appears to have been caused thereby. *State* v. *McGee,* 80 Conn. 614, 619, 69 Atl. 1059; *State* v. *Lee,* 69 Conn. 186, 195, 37 Atl. 75; 35 C. J. 389." *Sherman* v. *William M. Ryan & Sons, Inc.,* 126 Conn. 574, 578, 13 A. 2d 134. As we further stated in that opinion, however, "hypothetical questions intended to elicit from a juryman in advance what his decision will be under a certain state of the evidence or upon a certain state of facts should not be permitted by the trial court. A party has no right to assume the facts of a case about to go on trial, and ascertain a juror's opinion in advance." See Busch, Law & Tactics in Jury Trials, § 82. Neither is a juror's knowledge or ignorance concerning questions of law a proper subject of inquiry. These are concerned with

matters which the juror is bound to take from the court. "A juror cannot be a law to himself, but is bound to follow the instructions of the court in that respect, and hence his knowledge or ignorance concerning questions of law is not a proper subject of inquiry upon the trial of the challenge for cause." *People v. Conklin*, 175 N. Y. 333, 340, 67 N. E. 624; *State v. Douthitt*, 26 N. M. 532, 535, 194 P. 879; *Carpenter v. Commonwealth*, 186 Va. 851, 865, 44 S. E. 2d 419; 50 C. J. S. 1043.

The questions to which the defendant objected, however, did not call for a statement by the prospective jurors of what they thought the law was. Rather, they were designed to expose the jurors' ideas of what they in their own minds would expect by way of care from a young boy as contrasted with an adult. The questions were calculated to disclose what the natural mental reactions of the jurors were and their abilities to discriminate. From the answers, counsel could gain impressions upon which he could decide whether he should exercise a peremptory challenge. For that reason it was within the discretion of the trial court to allow the questions. However, particularly in view of the existing congestion of the courts' jury dockets and the apparently increasing resort by counsel to examinations on the voir dire, it is important that the trial courts, in the exercise of their discretion, be punctilious in restricting counsel's inquiries to questions which are pertinent and proper for testing the capacity and competency of the juror; *State v. Cross*, 72 Conn. 722, 730, 46 A. 148; and which are neither designed nor likely to plant prejudicial matter in his mind. *Marmon Motor Car Co. v. Schafer*, 93 Ind. App. 588, 590, 178 N. E. 863; 31 Am. Jur. 637. The court should also be careful promptly to cut short any line of inquiry by counsel which it has reason to believe is of a dilatory nature.

There is no error.
In this opinion the other judges concurred.