STATE OF CONNECTICUT *v.* JAMES CLARK

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued December 6, 1972—decided January 4, 1973

*John R. Williams,* for the appellant (defendant).

*Jerrold H. Barnett,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *John J. Kelly,* assistant state's attorney, for the appellee (state).

HOUSE, C. J. On a trial to a jury the defendant was found guilty of selling narcotics (heroin) in violation of § 19-480 (a) of the General Statutes. He has appealed from the judgment rendered on the verdict. This case arose out of the same police investigation which gave rise to the case reported as *State* v. *Brown,* 163 Conn. 52, 301 A.2d 547. The decision of this court on the appeal in the *Brown* case was handed down while the present case was pending on appeal and as a result of that opinion, which decided many of the questions of law originally raised in the present appeal, the defendant has abandoned all but two of his assignments of error. One of these concerns a ruling of the court refusing to excuse a venireman for cause. The other concerns a portion of the court's charge to the jury. Under these circumstances, it is unnecessary to detail the facts giving rise to the arrest and trial. It suffices to note that the state presented evidence that the defendant had sold six glassine bags of heroin to an undercover police investigator.

The first assignment of error which is pressed on the appeal is that the trial court committed error in refusing to excuse from service on the jury a venireman, Louis Tommer. The defendant contends that Tommer should have been excused from service on the ground of "implied bias."

The record discloses that the voir dire examination of veniremen consumed two days and the court was repeatedly required to sustain objections to the wide-ranging scope of interrogation attempted by

counsel for the defendant. "The trial court is vested with wide discretion in conducting the examination of jurors." *Childs* v. *Blesso,* 158 Conn. 389, 394, 260 A.2d 582; *State* v. *Higgs,* 143 Conn. 138, 142, 120 A.2d 152. If anything, the court was unduly liberal in the latitude afforded counsel in questioning veniremen. As we noted in *Duffy* v. *Carroll,* 137 Conn. 51, 56, 75 A.2d 33, quoting from *Sherman* v. *William M. Ryan & Sons, Inc.,* 126 Conn. 574, 578, 13 A.2d 134, " 'hypothetical questions intended to elicit from a juryman in advance what his decision will be under a certain state of the evidence or upon a certain state of facts should not be permitted by the trial court. A party has no right to assume the facts of a case about to go on trial, and ascertain a juror's opinion in advance.' See Busch, Law and Tactics in Jury Trials, § 82. Neither is a juror's knowledge or ignorance concerning questions of law a proper subject of inquiry. These are concerned with matters which the juror is bound to take from the court." "[A]ll too frequently such inquiries represent a calculated effort on the part of counsel to ascertain before the trial starts what the reaction of the venireman will be to certain issues of fact or law or, at least, to implant in his mind a prejudice or prejudgment on those issues. Such an effort transcends the proper limits of the voir dire and represents an abuse of the statutory right of examination." *State* v. *Mendill,* 141 Conn. 360, 362, 106 A.2d 178.

The defendant had exhausted all of his peremptory challenges when Tommer was called for questioning. The examination disclosed that he had had no prior jury experience nor had he ever been a witness in a criminal case. From 1937 to 1945 he was a member of the police department of the city of New York, serving on the emergency squad, where

he was very rarely in uniform. In 1945, he transferred from the police department and until 1957 served in New York as a court attache, serving for a while as captain of courts in charge of all personnel in uniform charged with maintaining order in the courtrooms and later as personal secretary to several judges. In these capacities the transportation of prisoners was not part of his duties and he reported to judges, not to prosecutors.

The defendant challenged the venireman "for cause, because of this extensive nature of the courts [sic] and so on, the amount of influence that would be exerted upon the other jury members, it would be disproportionate to the equal role of each juror, the role they should play, in addition to the fact that he has extensive connection with the police department." The court refused to exclude Tommer, saying: "You haven't shown me anything that would disqualify this man as a juror, nothing."

We find no error in the ruling of the court. On this appeal the defendant claims no reason for disqualification of the venireman aside from the claim of "implied bias," based solely on his former employment. Connecticut has no common-law rule or statute prohibiting or exempting an active police officer from service on a jury solely because of his occupation, let alone a retired or former police officer. See General Statutes § 51-219. We find ourselves in agreement with the holding of the Circuit Court of Appeals for the Second Circuit which recently (1970) stated in *Mikus* v. *United States,* 433 F.2d 719, 724, a case involving a similar claim of disqualification: "The mere fact of membership on a police force is not presumptively a disqualification for service on a jury in a criminal trial. *United States* v. *Wood,* 299 U.S. 123, 140n. 9, 57 S. Ct. 177,

81 L. Ed. 78 (1936); *Cavness* v. *United States,* 187 F.2d 719, 723 (9th Cir.), cert. denied, 341 U.S. 951, 71 S. Ct. 1019, 95 L. Ed. 1374 (1951); *Marshall* v. *United States,* 355 F.2d 999, 1009 (9th Cir.), cert. denied, 385 U.S. 815, 87 S. Ct. 34, 17 L. Ed. 2d 54 (1966). *A fortiori,* the former police officer who had ceased his public law enforcement work in 1956 was more than sufficiently insulated against an attack of presumptive prejudice . . . . This court does not choose to create a set of unreasonably constricting presumptions that jurors be excused for cause due to certain occupational or other special relationships which might bear directly or indirectly on the circumstances of a given case, where, as here, there is no showing of actual bias or prejudice. See *United States* v. *Haynes,* 398 F.2d 980, 983–986 (2d Cir. 1968), cert. denied, 393 U.S. 1120, 89 S. Ct. 996, 22 L. Ed. 2d 124 (1969). 'Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.' *United States* v. *Wood,* supra, 299 U.S. at 145, 146, 57 S. Ct. at 185. Rather, this court adheres to the principle that a defendant must 'raise a contention of bias from the realm of speculation to the realm of fact.' The trial court, in turn, when empaneling a jury, 'has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor.' *Dennis* v. *United States,* 339 U.S. 162, 168, 171-172, 70 S. Ct. 519, 521, 94 L. Ed. 734 (1950). . . . 'Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury,' *Dennis* v. *United States,* supra, 339 U.S. at 171–172, 70 S. Ct. at 523. We are satisfied that ap-

pellant's trial counsel was given that opportunity and, as noted earlier, we are unable to say that the trial court erred in not finding manifest prejudice, which would have raised the presumption of partiality upon which appellant is necessarily dependent."

We find no error in the ruling of the court refusing to exclude Tommer from service as a juror in the case.

The defendant's remaining assignment of error requires but brief comment. Section 19-480 (a) of the General Statutes, under which the defendant was charged, provides a penalty for the sale of any narcotic drug "except as authorized in this chapter." The chapter containing the statutes referred to authorizes certain persons such as druggists, physicians and licensed manufacturers to sell narcotics. Section 19-474 of the General Statutes provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant." In *State* v. *Brown,* 163 Conn. 52, 301 A.2d 547, we discussed the import of the language of § 19-474 which was adopted from the Uniform Narcotic Drug Act. We concluded in accordance with the great weight of authority that its provisions are consistent with the constitutional mandate of due process of law and that the state has the right to rely on its provisions unless and until the defendant offers such evidence as he desires as to any excuse, proviso or exemption, the benefit of which he claims. "As soon as substantial evidence tending to prove his claim comes into the case, General Statutes

§ 19-474 loses all operative effect. The state may then rebut this evidence if it desires or submit the issue to the court on the evidence offered." Id., pp. 67–68. As we also noted in that case, where there is no evidence on the issue of license or authorization there is no occasion for the court to charge the jury on the matter.

In the present case, the defendant did not introduce any evidence tending to bring him within any exception to § 19-480 (a). Nevertheless, he requested that the court charge the jury that he could not be convicted unless the state proved beyond a reasonable doubt that he did not have a license to sell narcotics and that "if you are unable to find beyond a reasonable doubt, from the evidence presented, that this defendant did not have such a license you must find the defendant not guilty." Since no evidence had been introduced from which it could be found that the defendant was authorized to sell narcotics the court could properly have refused to mention the statutory exception. Induced, however, by the defendant's request to charge, the court mentioned the statutory exception to the jury and informed them that it was not applicable because no claim of license had been raised by the defense so that his plea of not guilty meant that the defendant denied that he had made the sale with which he was charged. Although as a result of the defendant's request, the court did include in its instruction to the jury mention of a question not put in issue, it was a correct statement of the law and, in its context, was in no way prejudicial to the defendant.

There is no error.

In this opinion the other judges concurred.