STATE OF CONNECTICUT *v.* LEON SHEPPARD

BOGDANSKI, PETERS, HEALEY, PARSKEY and O'DONNELL, Js.

Argued October 16—decision released December 2, 1980

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Brian Cotter,* assistant state's attorney, for the appellee (state).

PETERS, J. The defendant Leon Sheppard was convicted, after a trial to a jury, of sexual assault in the first degree in violation of General Statutes § 53a-70. The sole issue on this appeal is whether

the trial court, *Moraghan, J.,* denied the defendant his constitutional rights to a public and fair trial by excluding the general public from the trial during the testimony of the complaining witnesses.

There is presently no dispute as to the relevant facts. The defendant, and one Walter Guyton,[1] were tried jointly on the basis of complaints of rape by two fifteen year old girls. Immediately prior to the commencement of the trial, before the jury had been summoned, the state moved that, during the testimony of the complainants, the courtroom be cleared of all spectators, other than the mothers of the complaining witnesses and the press. The defendant raised constitutional objections to the granting of the state's motion, and argued that the present case did not warrant exclusion of the public because it did not involve a particularly heinous or violent sexual assault. The state decried the propriety of distinctions among sexual assaults, and pressed its motion, which the court granted. When it granted the motion, the court had as yet heard no evidence concerning the nature of the crime with which the defendant had been charged. It had before it only the information charging a sexual assault in the first degree at Danbury on or about November 6, 1978, in violation of General Statutes § 53a-70,[2] and the bill of particulars specifying the name of the complainant, the approximate time and location of the alleged offense and the

[1] Guyton was found not guilty by the jury.

[2] General Statutes § 53a-70 provides: "(a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or (2) by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

charge that the defendant had compelled the complainant to engage in sexual intercourse by the use of force against her.

Had the state made an offer of proof to substantiate its motion for closure, it would presumably have relied upon evidence similar to that presented at the trial. During the trial, the principal factual issue came to be whether intercourse had been forced upon the complaining witnesses or whether they had consented thereto. The girls were shown to have gone willingly to the house in Danbury in which the crimes were alleged to have occurred, and they made no attempt to complain to anyone that they had been assaulted until after they had been apprehended by the police for having stolen a car. The defendants, in turn, admitted that they had had intercourse with the girls.

That the jury, too, were concerned with the question of consent is probable in the light of their requests for elaboration of the law and rereading of testimony during their twelve hours of deliberation. They asked to have reread to them: the testimony of the complaining witnesses concerning their time in the Danbury house; the medical testimony, which corroborated intercourse but indicated that no lacerations or bruising were found; the meaning of force and of reasonable doubt; and the law as to the various degrees of sexual assault.

After the jury's verdict finding him guilty, the defendant unsuccessfully moved to set aside the verdict, for acquittal and for a new trial. The court then ordered a presentence report. At the hearing concerning the sentence to be imposed, the court addressed the degree of violence in this particular case, noting: "The use of violence could not be

called substantial. It's certainly not a situation where someone would utilize a gun or a knife or a razor or something equally frightening, but, nevertheless, there certainly was physical force and coercion."

The only issue on this appeal is whether the trial court erred in excluding the general public from the defendant's trial during the testimony of the fifteen year old girls who were the complaining witnesses. The right to a public trial is a right guaranteed in all criminal prosecutions by the provisions of the sixth and fourteenth amendments to the United States constitution;[3] see *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980); *Levine* v. *United States,* 362 U.S. 610, 616, 80 S. Ct. 1038, 4 L. Ed. 2d 989 (1960); and by article first, § 8 of the Connecticut constitution.[4] Public trials vindicate an important public interest in the process by which trials are conducted; *Richmond Newspapers, Inc.,* supra; and play as well an important part "as a security for testimonial trustworthiness." 6 Wigmore, Evidence § 1834, p. 435 (1976).

Like other important constitutional rights, the right to a public trial "is not a limitless imperative." *Aaron* v. *Capps,* 507 F.2d 685, 687 (5th Cir. 1975); *United States ex rel. Latimore* v. *Sielaff,* 561 F.2d 691, 694 (7th Cir. 1977); *Lacaze* v. *United States,*

---

[3] The sixth amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

The fourteenth amendment provides, in relevant part: ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

[4] Article first, § 8 provides, in relevant part: "In all criminal prosecutions, the accused shall have a right . . . to a speedy, public trial . . . ."

391 F.2d 516, 521 (5th Cir. 1968); *United States ex rel. Bruno* v. *Herold,* 368 F.2d 187, 188 (2d Cir. 1966). An accommodation must sometimes be made between the individual's right to a public trial and other societal interests that might justify closing the courtroom to the public. The court's power to order a closure should, however, be sparingly exercised, and limited to those situations where closure is demonstrably necessary to further the administration of justice. *United States* v. *Hernandez,* 608 F.2d 741, 747 (9th Cir. 1979); *United States ex rel. Lloyd* v. *Vincent,* 520 F.2d 1272, 1274 (2d Cir. 1975); *People* v. *Jones,* 47 N.Y.2d 409, 414, 391 N.E.2d 1335, cert. denied, 444 U.S. 946, 100 S. Ct. 307, 62 L. Ed. 2d 315 (1979). Applying that standard to the particular circumstances of the case before us, we conclude that the trial court had an insufficient basis in fact for the order of closure.

The cases in which a trial court has been held to have acted properly in excluding the public are cases in which there was a reasonable basis in fact for a determination that closure was required to keep order in the courtroom or to foster full and truthful testimony. See *People* v. *Jones,* supra; *United States* v. *Hernandez,* supra. A paradigmatic example is the demonstrated need to protect a witness, such as an informer, from threatened harassment or physical harm. See *United States* v. *Hernandez,* supra; *United States* v. *Eisner,* 533 F.2d 987, 993–94 (6th Cir.), cert. denied, 429 U.S. 919, 97 S. Ct. 314, 50 L. Ed. 2d 286 (1976); *United States ex rel. Bruno* v. *Herold,* 408 F.2d 125, 128 (2d Cir. 1969). Another example is the demonstrated need to protect a witness from a substantial threat of indignity that might induce reluctance to testify about a lurid or heinous sexual assault. See *United*

*States ex rel. Latimore* v. *Sielaff,* supra, 694–96 (multiple rapes by several defendants); *Giese* v. *United States,* 262 F.2d 151, 156–57 (9th Cir. 1958), cert. denied, 361 U.S. 842, 80 S. Ct. 94, 4 L. Ed. 2d 80 (1959) (eight year old rape victim, aged nine at trial; other witnesses aged seven and eleven years). This court has sanctioned closure where "[t]he young witness was called upon to testify to all the sordid details of a particularly revolting rape." *State* v. *Purvis,* 157 Conn. 198, 207, 251 A.2d 178 (1968), cert. denied, 395 U.S. 928, 89 S. Ct. 1788, 23 L. Ed. 2d 246 (1969). In this case, in the absence of evidence in support of the state's motion, neither the information nor the bill of particulars was sufficient to demonstrate such a likelihood that testimony would be withheld or distorted if the courtroom remained open to the public as to outbalance the defendant's right to a public open trial. We are not prepared to say that every charge of rape involving a complainant who is a minor is necessarily so embarrassing and intimidating that closure is warranted, and there was, in this case, no further factual basis proffered by the state in support of its motion to exclude the general public from the defendant's trial.

If the state, over the defendant's objection, seeks to have a trial closed during the testimony of designated witnesses, it must furnish to the court some information to demonstrate a compelling need to deny his right to a public trial. The court may then conduct an evidentiary hearing into the propriety of excluding the public, unless it is satisfied from the examination of an affidavit, or from a colloquy with counsel or from the testimony of witnesses, that there exists a factual justification for exclusion of the public. *United States* v. *Hernandez,*

supra, 748; *People* v. *Jones,* supra, 414–15. On the basis of a factual showing, the court can then determine what kind of exclusionary order, if any, is warranted. It is axiomatic that the order should be reasonably limited to respond only to the compelling need for closure. In the present case, for example, the court should have inquired whether it was necessary to exclude members of the defendant's family, when members of the complainant's family were permitted to remain in the courtroom. Cf. *Aaron* v. *Capps,* 507 F.2d 685, 687 (5th Cir. 1975).

The error in excluding the public from the defendant's trial requires reversal of his conviction. The failure to provide a public trial deprives the defendant of a fundamental constitutional right and the public of access to an open judicial forum. See *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980); *People* v. *Jones,* 47 N.Y.2d 409, 391 N.E.2d 1335 (1979). Under these circumstances, the defendant cannot be required to make an affirmative showing of how he was specifically prejudiced by the closed trial. Because demonstration of prejudice in this kind of case is a practical impossibility, prejudice must necessarily be implied. *United States* v. *Hernandez,* supra, 747; *United States* v. *Eisner,* supra, 993; *United States* v. *Kobli,* 172 F.2d 919, 921 (3d Cir. 1949); *Tanksley* v. *United States,* 145 F.2d 58, 59 (9th Cir. 1944); *State* v. *Anthony,* 172 Conn. 172, 177, 374 A.2d 156 (1976); *People* v. *Jones,* supra, 417; cf. *United States ex rel. Latimore* v. *Sielaff,* supra, 694.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.